I understand that everyone is here at least on the first three cases, so we will proceed with the first case, Mazzarella v. Amica Mutual Insurance. Good morning. May it please the Court, Thomas Finder-McArthur in English for the appellant Mazzarella with my colleague Paula Cedillo also of McArthur in English. On our appeal, we contend that the District Court made an error when it dismissed at the motion to dismiss stage the Mazzarella's complaint. There were several errors that were made with this decision. In the a loss that would entitle them to coverage. Clearly, based upon Rule 8, the face of the complaint, paragraph 36 in particular, clearly outlines the losses that were sustained by the Mazzarella's. We contend that the District Court erred in its decision in holding the Mazzarella's to an improper standard because what the court said during oral argument, and this is in the record at JA 318, the court said that the Mazzarella's had to allege a loss and that the loss has to go far enough to remove it from the exclusion. And specifically during the hearing, the court stated you haven't gone into enough detail to remove it from the exclusions that seemingly apply on their face and to be plausible to be a plausible claim. Let me ask you this. The exclusion is incredibly broad. It seems to cover water and all forms of water. So how, and the complaint alleges damage caused by water and oxygen infiltration and rainwater. How does that not fit within that incredibly broad definition of water? Surface water, ground water, seepage, all kinds of water. That's correct. So once we've established the loss, then the burden shifts to AMICA. I mean, I think there may be a problem on the District Court's finding about direct loss, but I'm concerned about the exclusion for water. And also there are other exclusions as well, but primarily the water. What the complaint alleges is that there was a chemical process where you have the water and the oxygen combining with the sulfate to then cause a sulfate attack which then caused the harm and the damage. So the complaint does not... Where did the water come from? Where did the water come from? I mean, you had an... Right, the expert report said and has alleged the water came from a number of places. It came, it could be subsurface water, it could be moisture in the air, it could be surface water, it could even be... So the policy excludes loss from surface water, from water below ground. Why is it not covered by the exclusion? Right, because what we're claiming is if you have an efficient cause, we're not claiming that the water caused the damage. It's not the water that caused the damage. If we had only water and we had water seeping, whether it's subsurface water, whether it's moisture, whether it's surface water, we wouldn't have the problem that we have. The water is a reagent to the process. The claim is not that it was the water. If it was only water, then we wouldn't have an issue. It's the water that combines with the oxygen and the sulfur that creates a chemical process. Where the sulfur is part of the the pyrite in the concrete? Yes. And the water and the oxygen is combined with something that's inherent in the to create a chemical process which then causes the damage. Yes. Isn't that covered by one of the exceptions, the exclusions? We contend no, because we contend that the law is that it has to be an unambiguous exclusion and we have to afford the plain meaning to the words. So when you look at the exclusions that apply to exclude insurance coverage in this that says water loss caused directly or indirectly regardless of any other cause or event contributing concurrently or in any sequence to the loss, doesn't that take away your argument about the combining the chemical process, etc., as long as water plays a part? I don't believe so, because when you look at the exclusion and you talk about the definition of water, the policy says water means flood, surface water, waves, tidal waves, tsunami. That's the general sense of water. The exclusion can't apply when water is the reagent. It's not the water that caused the harm, because we wouldn't have a without the water, you don't have the rusting, you don't have the reaction with the substance in the concrete. The water is essential to the process which causes the damage, so I don't know how you can say it's not the water. The water is what drives the oxidation. Because the water is one of the elements. Sure, so the water is a part of the process that causes the injury. Without the presence of the water, there's no injury, right? If the water hadn't gotten into the concrete, the concrete wouldn't have reacted, and the concrete then would have crumbled and caused the damage to the foundation that you assert. But the allegation in the complaint is not that the water caused it, it was the chemical reaction. There's no exclusion to the chemical reaction. I don't understand. It's similar to the Farrell case, Your Honor, where the court there said where there was an exclusion for the pollution exclusion. Did your expert conclude that the water contributed to the chemical reaction? It was the amicus expert, Your Honor, that had came out and analyzed the foundation. Do you dispute that under your theory, your client's theory of damage, that the water contributed to the chemical reaction? No, and the experts found that it was exactly as we've stated. It was the combination of water. Isn't it excluded then under this language? I mean, I don't understand what the point of the policy is, but that's a different question. Because as we've alleged it, once we allege the loss, and then we allege that it was the chemical process that caused it, then we look at, certainly at the motion to dismiss stage, we've alleged enough. What we're arguing at the motion to dismiss stage is whether it's water or whether it's a chemical reaction process, and we believe that's the error. All right, thank you. Do you have some time? Okay. Thank you, Your Honor. Good morning, Your Honors. Chris Riley of Sloan & Walsh for the Defendant Napoli Amica Mutual Insurance Company. This is a homeowner's insurance policy, right? It is, Your Honor, yes. It's hard for me to understand what the point of the policy is if it doesn't cover this kind of damage from water seeping into the building. Yeah, well, it's an all-risk policy, Your Honor, and so what that says, it's not like the old policies that were enumerated peril policies. So what the policy seeks to do is it says, we're going to cover you for any property damage you suffer from any risk, unless it's a non-fortuitous loss, is what we're covering is fires, a tree falls into your house, wind damage to your building, and so it's priced accordingly. It is, Your Honor. If you wanted coverage for water loss, you'd have to buy a different policy, is that how? There are, I know there are maintenance contracts. In New York City, so we don't have to deal with that. Yeah, I live in Massachusetts on the ocean, so I do have to deal with it. I'm in a flood zone, but there is, you know, there's flood policies you can purchase. There are state mandate or state-controlled insurance agencies for high-risk locations in Massachusetts. For instance, where I live, there's an agency that if you have property on the insurance, you know, normal homeowner's policies are not going to cover those because the risk is too high, but there are quasi-governmental insurance agencies who will cover that, but the reason, you know, we talk about the brief and we list, you know, there's the water exclusion, there's the property, quality and property destroy itself, deterioration, all of those things are trying to say we're giving you an all-risk policy, but we're covering fortuitous losses, and so they're really versions of essentially two broader exclusions, long-term wear and tear and faulty workmanship or maintenance in the building of the process, and that's why there are a litany of exclusions in reading it. I know it seems like, well, what is covered, but really it's there are multiple exclusions trying to narrow it on these non-fortuitous grounds. Is there anything in the record to indicate at what point in time the water started entering the concrete? There's not, Your Honor. I know the expert report relied upon, I believe that the section they're talking to talks about this process generally and is saying generally this process can be caused by any number of things. Here the allegations are there's water underneath the ground going into the concrete basement. Presumably that's been happening over a number of years since the home was built in 1992, and getting back to the idea of fortuity. Suppose it had happened suddenly that there was flooding that caused the water to go in would that be covered? Well, it couldn't happen suddenly because water can't, I guess if you had, I'm trying to think of a physical part of the concrete that could react that suddenly, but there is no deterioration that happens suddenly. With respect to the to the pleading issue, I understand the court has expressed some skepticism. I just would like to point out that it's in the case where what happened in this case was there was original complaint. What does direct physical loss mean? In the England case they say it's a tangible physical alteration of property. And the damage here, wouldn't that be tangible physical loss? We don't know, and the reason why it's important is they say, what more should they have alleged on this first part? They could have alleged what they alleged in their first complaint before they amended. In their first complaint they said there was deterioration, it's on the record citation is on JA 17. They said there was significant property damage to their residence including cracking, crumbling, and discoloration in concrete, which falls right into an exclusion. They go on to say cracking, heaving, and separation of floor tiles, also in the exclusion. Warping and racking of windows and doors, and separation of chimneys from the residence. And the reason that that I ruled on the Twombly-Iqbal ground is saying this is a direct physical loss because it's a direct physical loss. That is exactly the legal conclusion Couch has affection for. It said more than that. It said damage to concrete basement walls, interior walls, floor tiles, etc. It spelled out in detail what was damaged. It spelled out in detail where was damaged. It didn't say what the damage was. And that again, because it's a concept, if for instance there are cases, the England case that's in the brief, one of the complaints said we're claiming that the direct physical loss is the chemical reaction. We're saying that is the physical loss. And the court ruled well that's not a physical alteration of property. You could argue that's a cause of losses, it's excluded. And so if you don't require more than just saying we had a direct physical loss, or you don't require more than just saying property damage to Part A, B, and C, then any claimant who has, or any, yeah, any claimant who has a claim denied can just bring a lawsuit saying I had direct physical loss to my property and get on to discovery. And I think that's, in the history of this claim where there was a first amended complaint, there was, there's original complaint, first amended complaint. Judge Underhill said at the hearing on the motion to dismiss the first amended complaint, I'm giving you an opportunity to come back and cross that line from possibility to plausibility. The second amended complaint repeated the same allegations with respect to property damage. And in the decision that we're here on today, Judge Underhill said I'm giving you a third opportunity, a fourth bite at the apple to come back and tell me what is the actual damage you're claiming. Because I know you're talking about the chimney and the windows. I'm telling you that I believe that the damage to the concrete foundation is excluded. And, you know, Judge Underhill was saying I know this case. I'm sitting here. Come back and tell me what it is that you think is covered. And I think that's, in the context of this case, why he ruled on the Iqbal Twombly grounds. And, Your Honors, with respect to the other exclusions, I'll touch on them briefly. If it's not the water, as Your Honors have pointed out, oxidation, that's a property that causes it to destroy itself. If it's, you know, the original, the faulty workmanship in pouring the concrete, that's excluded as well. So it's really, wherever they want to say the efficient proximate causes or the cause of this loss is, it falls into an exclusion because this is not a fortuitous loss. It's not the type of loss that's supposed to be covered. Thank you. Thank you. We'll hear the rebuttal. Your Honor, what's important about this case and critical to the appeal is the stage that we're at. We believe that we've established the loss. Once that loss is, do you agree the policy covers fortuitous losses? That's the intent. Did you allege a fortuitous loss? Yes. How so? We allege a direct loss under the policy that would be covered when we look at the allegations that are in the complaint. What in the complaint describes this as a fortuitous loss? Not necessarily that word, but the circumstances that would suggest that it's a fortuitous loss. When you read the policy in its whole, and you look at the exclusion... What in the complaint alleges that? Where? Paragraph 36 talks about... Which complaint? In the operative complaint, which is the second amended complaint. Yes, Your Honor. Page? It's page six of the complaint. It's the joint appendix 145. 145? Yes. Thank you. Okay. Your Honor, to answer your question, this is exactly the type of loss that should be covered. When you read the exclusions... When you say... I'll read it. The residents suffered direct physical loss to the concrete basement walls, interior walls, floor tiles, sub floors, wood floors, interior doors and windows in the chimney caused by water and oxygen filtration. It's rather summary, isn't it? That doesn't tell you what. It doesn't tell you that's fortuitous. Yeah. Well, I think... It's different than a tree. I was telling my clerks, homeowners don't always wonder. They're sitting there in the middle of the night wondering whether they're covered or not. I remember sitting through an ice storm in 1991 and hearing the trees coming down and wondering, am I covered or not? And fortunately, I was because the tree hit the house. Tree doesn't hit the house, then homeowners doesn't do anything about getting rid of the tree. But as long as the tree hits the house, breaks the window. So if I had sued my... If I had to sue my insurance company, I would have said the tree hit the house and broke the windows, causing damage to the home, fortuitous loss. This doesn't tell us anything about how the injury occurs or just kind of accidentally says a loss. It does because... I'm not... I'm using an example, I'm not trying to... Yes. And it does because when you read the complaint and you look at what's alleged, the direct losses, those losses should be covered. And why it's fortuitous is because when you look at and read the plain language of the exclusion, we talk about deterioration, settling, shrinking, bulging of the foundation. We know what that means. That means as a foundation, as it ages, we've all seen a 100 year foundation, that's not covered, that's not what's expected. What we have here is an intervening... The process took over a few days or did it take years for this process to occur? This process manifests itself over years because the house was built in 1992, but it's still a fortuitous... It's the event that we're talking about is the chemical process. We're not talking... It's the negligence of the in the concrete that was used, as I understand it, in 35,000 homes throughout Connecticut? More than 30,000 homes in Connecticut. And there's 21 legislators that just asked the governor and the Attorney General and the Commissioner of Insurance to investigate these homes and the conduct of the insurance companies for unfair trade practices. But the point is, it is a fortuitous loss. We're not talking about normal wear and tear. We're not talking about... We're not talking about deterioration. We're not talking about the bulging. What we're talking about and what's alleged in the complaint is a chemical process. That chemical process is the efficient cause. It set everything else in motion. I will conclude by suggesting that this is the exact reason that you have insurance. The losses that are suffered, this is why there is insurance. There's the inequities here to allow the insurance companies in this very lengthy unilateral insurance contract where we're arguing subtleties and difficult definitions and exclusions. The Mazzarellas should be permitted to go forward and establish and show their proof. It cannot be that our interpretation and our grappling with the language and with what we have here can operate to exclude coverage. This is the reason people have insurance. This is why you pay 25 years of insurance premiums for. Thank you. Thank you. We have your arguments. We'll reserve decision. Thank you very much.